UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

    **TERRORIST ATTACKS ON**
    **SEPTEMBER 11, 2001**

03-MD-01570 (GBD)(SN)

**OPINION & ORDER**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

This document relates to:

    DeRubbio, et al. v. Islamic Republic of Iran, No. 18-cv-05306
    Agyeman, et al. v. Islamic Republic of Iran, No. 18-cv-05320
    Morris, et al. v. Islamic Republic of Iran, No. 18-cv-05321
    Schlissel, et al. v. Islamic Republic of Iran, No. 18-cv-05331
    Kamardinova, et al. v. Islamic Republic of Iran, No. 18-cv-05339
    Abel, et al. v. Islamic Republic of Iran, No. 18-cv-11837
    Kim, et al. v. Islamic Republic of Iran, No. 18-cv-11870
    Jimenez, et al. v. Islamic Republic of Iran, No. 18-cv-11875
    Rivelli, et al. v. Islamic Republic of Iran, No. 18-cv-11878
    Aamoth, et al. v. Islamic Republic of Iran, No. 18-cv-12276
    Hemenway, et al. v. Islamic Republic of Iran, No. 18-cv-12277
    Rowenhorst, et al. v. Islamic Republic of Iran, No. 18-cv-12387
    Bodner, et al. v. Islamic Republic of Iran, No. 19-cv-11776
    Bernaerts, et al. v. Islamic Republic of Iran, No. 19-cv-11865
    Aron, et al. v. Islamic Republic of Iran, No. 20-cv-09376
    Asaro, et al. v. Islamic Republic of Iran, No. 20-cv-10460
    Amato, et al. v. Islamic Republic of Iran, No. 21-cv-10239

Plaintiffs from 17 cases ("Movants") move for partial final default judgments against the Islamic Republic of Iran. See ECF Nos. 8631, 8632, 8633, 8634.[1] The Movants are the estates of 9/11 victims and their immediate family members who were all non-United States nationals on 9/11. Like other non-U.S. nationals, they are excluded from the federal cause of action that most plaintiffs in this multidistrict litigation use to bring claims against Iran. See 28 U.S.C.

---

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

§ 1605A(c). This motion therefore presents a new issue: Iran's liability under state tort law. For the following reasons, the Court denies the motion with leave to refile.

## DISCUSSION

As with all cases against sovereign defendants, we begin with the Foreign Sovereign Immunities Act ("FSIA"). Under the FSIA, courts have jurisdiction over cases against foreign states only if (i) an exception to sovereign immunity applies and (ii) special service procedures are followed. See Republic of Sudan v. Harrison, 139 S. Ct. 1048, 1053–54 (2019). The Movants assert that (i) 28 U.S.C. § 1605B(b)—the exception to immunity for injury or death in the U.S. due to international terrorism caused by a foreign state's tortious act—applies and (ii) service was properly completed under § 1608(a)(4). See ECF No. 8632 at 14–33, 36–42. The Court assumes this is correct for purposes of this decision and focuses its analysis on liability.

The FSIA makes foreign states "liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606. In other words, it operates as a "'pass-through' to the substantive law" that would apply to a similar dispute between two people. Cassirer v. Thyssen-Bornemisza Collection Found., 142 S. Ct. 1502, 1508 (2022) (quoting Oveissi v. Islamic Republic of Iran, 573 F.3d 835, 841 (D.C. Cir. 2009)). This mechanism permits plaintiffs (who may have no federal cause of action) to bring state tort claims and other causes of action against sovereign defendants.

Here, the Movants use this pass-through mechanism to sue Iran for intentional infliction of emotional distress ("IIED"), wrongful death, and survival under New York, Pennsylvania, and Virginia state tort law. See ECF No. 8632 at 42–47. They urge the Court to conclude that the three states' tort regimes are substantially identical and thus to apply New York law to the Movants' claims. See id. at 49–50. They further ask the Court to find Iran liable for IIED,

wrongful death, and survival and award damages consistent with those awarded to U.S.-national plaintiffs. See id. at 42–59.

Before finding liability or awarding damages, however, the Court must grapple with the new issues these claims present. Past default judgments against Iran analyzed liability under § 1605A(c), the federal cause of action available to U.S. nationals. See, e.g., In re Terrorist Attacks on Sept. 11, 2001, No. 03-md-01570 (GBD)(SN), 2011 WL 13244047, at *39 (S.D.N.Y. Dec. 22, 2011). Following other courts' lead, the Court construed that section by "relying on well-established principles of law, such as those found in the Restatement (Second) of Torts." Bodoff v. Islamic Republic of Iran, 907 F. Supp. 2d 93, 103 (D.D.C. 2012) (cleaned up); see, e.g., In re Terrorist Attacks on Sept. 11, 2001, No. 03-md-01570 (GBD)(SN), 2023 WL 2529061, at *5 (S.D.N.Y. Mar. 3, 2023). It did not limit its analysis to any individual state's body of tort law. Here, by contrast, the relevant causes of action arise from state law, so Iran's liability must be determined under the appropriate state's tort principles.[2]

At the outset, this means determining which state's law governs. In multidistrict litigation cases, federal courts apply "the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed." Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993). These 17 cases were all filed in the Southern District of New York, so we apply New York State choice-of-law rules to the Movants' IIED, wrongful death, and survival claims.

New York has different choice-of-law rules for different types of claims. IIED claims are considered "conduct-regulating," so the law of the "'place of the tort'" controls.[3] Padula v. Lilarn

---

[2] The Court declines to find controlling the Court's 2012 Report & Recommendation on the question of state tort liability. See ECF No. 2618 at 14. The section cited by the Movants did not include a comprehensive analysis of the question and the citation to Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 76–80 (D.D.C. 2010), concerns liability under the § 1605A(c) cause of action.
[3] New York courts use "place of the tort," "place of the wrong," and "place of the injury" interchangeably. For simplicity, this decision uses only "place of the tort."

Prop. Corp., 84 N.Y.2d 519, 522 (1994) (quoting Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 198 (1985)). That "place" is the jurisdiction "where the last event necessary to make the [defendant] liable occurred," even if "the defendant's [mis]conduct . . . occur[red] . . . in another [jurisdiction]." Schultz, 65 N.Y.2d at 195; accord In re Air Crash Near Clarence Ctr., N.Y., 983 F. Supp. 2d 249, 254 (W.D.N.Y. 2013). The relevant events occurred when al Qaeda operatives crashed four hijacked airliners into the Twin Towers, a field near Shanksville, and the Pentagon. Accordingly, the claims brought by the family members of people killed in those attacks are respectively governed by New York, Pennsylvania, and Virginia law.

Wrongful death and survival claims, on the other hand, are considered "loss-allocating," Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Ctr. Props., LLC, 435 F.3d 136, 139 (2d Cir. 2006) (cleaned up), and are governed by the framework set out in Neumeier v. Kuehner, 31 N.Y.2d 121 (1972). Neumeier announced three rules:

(1) If the plaintiff and defendant are "domiciled in the same state, . . . the law of their shared jurisdiction controls." Edwards v. Erie Coach Lines Co., 17 N.Y.3d 306, 321 (2011).

(2) If the plaintiff and defendant are "domiciled in different [s]tates and the local law favors the respective domiciliary," the law of the "place of [the tort]" applies. Cooney v. Osgood Machinery, Inc., 81 N.Y.2d 66, 73 (1993).

(3) In all other "split-domicilee cases," the "governing law will be that of the place [of the tort] . . . unless 'displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants.'" Id. at 73–74 (quoting Neumeier, 31 N.Y.2d at 128).

In cases with a multiplicity of parties, the courts apply these rules "consider[ing] each plaintiff vis-à-vis each defendant." Edwards, 17 N.Y.3d at 329. Here, despite the number of Movants and diversity of domiciles, that task is easier than one might predict. The first rule does not apply because no Movant is domiciled in Iran. And under either the second or the third rule, the law of the "place [of the tort]" governs. Cooney, 81 N.Y.2d at 73–74. As with the IIED claims, that

4

means the laws of New York, Pennsylvania, and Virginia respectively apply to the estates of people killed in those attacks.

The Movants urge the Court to apply New York law to all claims on the theory that "when the laws of different states (or the federal common law) are substantially the same, there is no conflict, and the forum state's law prevails." ECF No. 8632 at 49. This is inconsistent with New York conflict-of-law rules. New York law requires courts to analyze choice-of-law on a party-versus-party or tort-by-tort basis, not by looking at the case as a whole. See Edwards, 17 N.Y.3d at 329.

To illustrate, consider a hypothetical California resident with a wrongful death claim arising from the Flight 93 crash. Under Neumeier, the Court could consider analyzing the plaintiff's claim under the laws of: (1) California, the plaintiff's domicile; (2) Iran, the defendant's domicile; and (3) Pennsylvania, the place of the tort. See Cooney, 81 N.Y.2d at 73–74. New York and Virginia law are not in the mix. The same basic fact pattern would apply to every Movant here. It follows that there is no need to compare wrongful death law across the three states and no basis for reverting to the forum state's law if the three are the same. The only way to view New York, Pennsylvania, and Virginia law as competing is if the litigation is evaluated *in toto*, and New York law prohibits that. See Edwards, 17 N.Y.3d at 329 (rejecting plaintiff's request for a "joint" choice-of-law analysis of all plaintiffs and defendants).[4]

---

[4] As an aside, the District Court for the District of Columbia faced a similarly varied set of parties in Estate of Doe v. Islamic Republic of Iran, 808 F. Supp. 2d 1 (D.D.C. 2011). There, the plaintiffs were domiciled in Lebanon, France, Saudi Arabia, Canada, Tunisia, California, Florida, Kentucky, New Jersey, and Florida; defendants were domiciled in Iran; the tortious conduct occurred abroad; and the injury occurred in Lebanon. See id. at 21–23. Applying District of Columbia choice-of-law rules, the court weighed the interests in applying "the law of the forum state (the District of Columbia), the law of the place of the tort (Lebanon), or the law of the domicile state or country of each plaintiff." Id. at 21. It noted that "in previous decisions, the court had applied the laws of the several domiciliary states." Id. at 22 (cleaned up). But it departed from that tradition and applied forum law to all the plaintiffs' claims in recognition of "the interests of uniformity of decision among the foreign national family members." Id.

Analyzing claims under three sets of state laws poses a problem for the Movants and the Court. Contrary to counsel's assertions, state law is outcome determinative for many of the Movants. For instance, Pennsylvania law recognizes IIED claims premised on harm to immediate family members but limits recovery to plaintiffs who directly witnessed their loved ones' injuries or deaths. See Peterson v. Islamic Republic of Iran, 515 F. Supp. 2d 25, 44–45 (D.D.C. 2007), abrogated on other grounds by Lin v. United States, 561 F.3d 502 (D.C. Cir. 2009) (dismissing IIED claims by "plaintiffs who were not contemporaneously present at the site of the [terrorist] attack" that killed or injured their family members because Pennsylvania "narrowly construe[s] [its] interpretation of what constitutes a valid IIED claim" and requires "presence . . . for third party plaintiffs to recover"); Taylor v. Albert Einstein Med. Ctr., 562 Pa. 176, 180–83 (2000) (barring mother from recovering for the death of her child under an IIED theory because she did not "contemporaneous[ly] observ[e]" the alleged tort). This precedent would preclude recovery by any Movant who lost a loved one in the Flight 93 crash. And because the Movants' filings do not allow the Court to determine which state's law applies to whom, the Court cannot resolve Iran's liability for the Movants' harms.

## CONCLUSION

The Court denies this motion with leave to refile. The Court appreciates counsel's efforts to address all the relevant factual and legal issues in its papers and asks that any future motion (1) raise any arguments specific to liability for IIED, wrongful death, or survival under New York, Pennsylvania, and Virginia law, and (2) indicate, for each plaintiff, the state in which the relevant decedent was killed.

---

The Court considered doing the same here, but New York choice-of-law rules are neither as flexible nor as sensitive to uniformity as those of the District of Columbia.


The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 8631.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   August 14, 2023
         New York, New York